IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TRACIE BARNES, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 16-214 |
| | : | |
| v. | : | |
| | : | |
| JOHN BROWN, NORTHAMPTON | : | |
| COUNTY, and LUIS CAMPOS, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                 September 26, 2016

The First Amendment prohibits public employers from taking adverse employment actions against an employee in retaliation for engaging in protected speech if the employee was speaking as a citizen, rather than pursuant to official job duties. The plaintiff, a former county human resources director, asserts claims against her employer under 42 U.S.C. § 1983 for violations of her rights under the First and Fourteenth Amendments, the Pennsylvania Whistleblower Law, 42 Pa. C.S. § 1421, and Pennsylvania common law. She contends that her employer forced her to resign in retaliation for reporting a matter of public concern—namely, alleged noncompliance with federal immigration law—up the chain of command. The defendants moved to dismiss these claims, asserting that, *inter alia*, the plaintiff failed to state a claim for a First Amendment violation because she did not speak as a citizen when she reported the alleged noncompliance. The court has reviewed the parties' submissions and the applicable record and will grant the motion for summary judgment. Because the plaintiff spoke pursuant to her duties as a public employee, rather than as a citizen, the First Amendment did not protect her speech regarding the noncompliance.

The plaintiff's remaining claims arise under state law, and the court declines to exercise supplemental jurisdiction over these claims.  As such, the court will also dismiss the remaining state law claims without prejudice.

## I.   PROCEDURAL HISTORY

On January 15, 2016, Tracie Barnes ("Barnes") initiated this action by filing a complaint against Northampton County ("the County"), County Executive John Brown ("Brown"), and Director of Administration Luis Campos ("Campos").  Doc. No. 1.  In the complaint, Barnes first asserts a constitutional claim under 42 U.S.C. § 1983, alleging that the defendants terminated her for her statements voicing her concerns about the County's compliance with federal immigration law in violation of the First Amendment.  Complaint at 7-8.  For her second claim, Barnes asserts that the defendants violated the Pennsylvania Whistleblower Law by terminating her for reporting misconduct and improper policies.  *Id.* at 9.  Regarding her final claim, Barnes contends that her retaliatory termination was wrongful and violated Pennsylvania public policy. *Id.* at 9-10.  For her requested relief, Barnes seeks, *inter alia*, compensatory damages, punitive damages, injunctive relief, and attorney's fees and costs.  *Id.* at 10.

On March 18, 2016, the defendants filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that: (1) Barnes's speech was not protected by the First Amendment, (2) her speech did not involve a good faith report of waste or wrongdoing as required by the Pennsylvania Whistleblower Law, and (3) her termination did not violate a clear mandate of public policy.[1]  Doc. No. 5.  In response to the motion to dismiss,

---

[1] The defendants also claimed that Brown and Campos were entitled to qualified immunity and the court should dismiss the claim for punitive damages.  *See* Brief in Supp. of Mot. to Dismiss Pl.'s Compl. at 5, 14-17, Doc. No. 5-1.

Barnes filed an amended complaint on April 1, 2016.[2]  Doc. No. 7.  The defendants then filed a motion to dismiss the amended complaint on April 14, 2016.[3]  Doc. No. 8.

On April 15, 2016, this court held an initial pretrial conference.  Noting that the vitality of Barnes's federal claim, as the only claim anchoring this court's original jurisdiction, would likely be forum-determinative, the court ordered limited discovery restricted to the issue of whether Barnes made her statements about the County's compliance pursuant to her official duties as Director of Human Resources.  The court then entered the parties' joint proposed discovery order with respect to this issue on April 22, 2016.  Order, Doc. No. 11.  The court also denied the defendants' motions to dismiss as moot and without prejudice to raising the issues in a forthcoming motion for summary judgment.  Order, Doc. No. 12.  After the parties conducted limited discovery on the above-referenced issue, the defendants filed the present motion for partial summary judgment as to Barnes's First Amendment retaliation claim on July 29, 2016.  Doc. No. 15.  Barnes filed an opposition to the motion on August 11, 2016.  Doc. No. 16.  The defendants filed a reply to her response on August 22, 2016.  Doc. No. 17.

## II.    FACTUAL BACKGROUND

For the purposes of setting up the analysis as to whether Barnes made the statements at issue pursuant to her official duties, the following facts are recited after viewing the summary judgment record in the light most favorable to Barnes.  Brown, the County Executive, appointed Barnes as the County's Director of Human Resources on March 10, 2015.  Defendants' Statement of Undisputed Material Facts ("Defs.' Facts") at ¶ 1, Doc. No. 15-2; Plaintiff's Resp.

---

[2] Although the amended complaint contained modified allegations, the three causes of action remained the same. *See* Amended Compl. at 7-10, Doc. No. 7.
[3] The motion to dismiss contained the three primary arguments from the original motion.  *See* Brief in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 6-20, Doc. No. 8-4.  The defendants also asserted that the court should dismiss the original capacity claims against Brown and Campos because they were duplicative of the claims against the County, and that the court should dismiss the claim for punitive damages. *Id.* at 20-21.

and Counter-Statement of Additional Facts to Defs.' Statement of Undisputed Material Facts at ¶ 1, Doc. No. 16-1.[4]  At the time, Campos was the County's Director of Administration, and Allen was the County's Deputy Director of Administration.  Defs.' Facts at ¶¶ 33-34; Pl.'s Resp. at ¶¶ 33, 34.  Northampton County Council approved Barnes's appointment on January 22, 2015, Defs.' Facts at ¶ 2; Pl.'s Resp. at ¶ 2, and  she began working for the County on March 10, 2015. Defs.' Facts at ¶ 11; Pl.'s Resp. at ¶ 11.

According to the County's Administrative Code, the Director of Human Resources reports directly to the County Executive, and is "ultimately accountable for the human resources functions of the County."  Defs.' Facts at ¶ 6; Pl.'s Resp. at ¶ 6; Pl.'s Facts at ¶ 6.  Article II, Section 2.03 of the Code says that "[t]he head of each department and office subject to the direction and supervision of the County Executive, shall . . . keep informed of and adhere to all laws . . . ."  Defs.' Facts at ¶ 4; Pl.'s Resp. at ¶ 4.  Article XIX, section 19.02(4) of the Code states that the Director of Human Resources shall "enforce all relevant laws and regulations promulgated by the Federal, State and Local governments . . . ."  Defs.' Facts at ¶ 7; Pl.'s Resp. at ¶ 7.  Finally, the job posting for the position of Director of Human Resources indicated that the Director of Human Resources "provides advice and assistance on human resource problems, [and] recommends actions, policies and procedures."  Defs.' Facts at ¶ 9; Pl.'s Resp. at ¶ 9.

Other staff members within the County's human resources department included Lorraine Schintz ("Schintz"), the Deputy Director of Human Resources, Lorena Morley ("Morley"), the Benefits Administrator, and Linda Markwith ("Markwith"), a Human Resources Generalist. Defs.' Facts at ¶¶ 26, 27; Pl.'s Resp. at ¶¶ 26, 27; Pl.'s Facts at ¶ 17.  Schintz managed the human resources department, and as Director of Human Resources, Barnes delegated

---

[4] The plaintiff's submission is a combination of her response to the defendants' statement of facts and her own counterstatement of facts.  Where applicable, the court refers to the portion of the submission dealing with the plaintiff's response as "Pl.'s Resp." and the part with the counterstatement as "Pl.'s Facts."

management tasks to her.  Deposition of Tracie Barnes ("Barnes Dep.") at 75, Doc. No. 15-3.

Clerical specialists within the department, who Schintz supervised, conducted orientation for

new employees.  Pl.'s Facts at ¶ 23.  At orientation, newly hired County employees completed

required work authorization paperwork, including tax and immigration forms.  *Id*.

On July 1, 2015, Barnes sought legal advice from Shawn Dethlefsen, an attorney in the

County Solicitor's office.  Defs.' Facts at ¶ 22; Pl.'s Resp. at ¶ 22; Barnes Dep. at 57.  Barnes

sought to confirm that the human resources department's procedures in accepting certain forms

of employee documentation were "sufficient for meeting I-9 eligibility verification

requirements."  Barnes Dep. at 57; Defs.' Facts at ¶ 23; Pl.'s Resp. at ¶ 23.[5]  Specifically, Barnes

suspected that the County was not complying with federal law requiring that new employees fill

out I-9 forms within three days of their first day of work.  Rather, she believed that the County

required new employees to fill out I-9 forms at orientation, which usually occurred the week

after an employee began working.  Barnes Dep. at 79-80.  Because County employees filled out

these forms during orientation, clerical specialists within the human resources department

maintained them.  Barnes Dep. at 17; Deposition of John Brown ("Brown Dep.") at 67, Doc. No.

15-4; Defs.' Facts at ¶¶ 18-20; Pl.'s Resp. at ¶¶ 18-20.

On July 8, 2015, Barnes answered a phone call from a new County employee.  Barnes

Dep. at 30-31, 79-80; Defs.' Facts at ¶ 24.[6]  Barnes eventually learned that the employee had not

yet completed an I-9 form.  Barnes Dep. at 30-31; Defs.' Facts at ¶ 25.  Barnes then sent an e-

mail to Schintz, Morley, and Markwith, inquiring further into the County's standard I-9

procedures.  Defs.' Facts at ¶ 26; Pl.'s Resp. at ¶ 26.  In that e-mail, Barnes also pasted an

---

[5] An I-9 form is used to verify a prospective employee's employment eligibility under federal immigration law.  *See* https://www.uscis.gov/i-9.

[6] In the defendants' statement of facts, they indicate that Barnes answered this phone call on July 10, 2015. Defs.' Facts at ¶ 24.  Based on Barnes's deposition and the e-mails discussed therein, however, Barnes took this phone call on July 8.  Barnes Dep. at 18, 79-81.

excerpt from the M-274 Handbook for Employers, intending to provide "guidance on how the I-9 forms are to be completed" in compliance with federal law.  Barnes Dep. at 32-33, 76.[7]  Barnes then e-mailed Brown, forwarding him the e-mail conversation between herself, Schintz, Morley, and Markwith, and stated that the human resources department would "need the cooperation of all Department Directors to address this item."  Defs.' Facts at ¶ 31; Pl.'s Resp. at ¶ 31.  She also requested a meeting with Brown to discuss the issue.  Defs.' Facts at ¶ 36; Pl.'s Resp. at ¶ 36.

On July 13, 2015, Barnes took a number of actions related to her I-9 compliance concerns.  First, she went to the filing cabinets where the I-9 forms were kept, and by looking through a number of employee files, she determined that the County was not having new employees complete the forms within the time period required by federal law.  Barnes Dep. at 34; Defs.' Facts at ¶ 30; Pl.'s Resp. at ¶ 30.[8]  Second, she called a labor and employment attorney for the County, Thomas Heimbach, with whom she had discussed other legal questions while working for the County.  Barnes Dep. at 36-37; Defs.' Facts at ¶ 39; Pl.'s Resp. at ¶ 39.

Third, Barnes e-mailed Ryan Durkin ("Durkin"), the County Solicitor, with whom she had also dealt on prior occasions while working for the County.  Barnes Dep. at 44-47; Defs.' Facts at ¶¶ 40, 42; Pl.'s Resp. at ¶¶ 40, 42.  In her e-mail to Durkin, she attached a proposed interoffice memorandum that provided for a new process by which all newly hired employees would submit their I-9 forms.  Barnes Dep. at 45-46; Defs.' Facts at ¶ 41; Pl.'s Resp. at ¶ 41.  She said that she intended to bring that proposed memorandum to the County cabinet meeting the next day, hoping that she "could advise the different departments using the information in that draft memorandum that hopefully would be backed up by the county executive to empower

---

[7] The United States Citizenship and Immigration Services' M-274 Handbook for Employers provides guidance for completing I-9 forms. *See* https://www.uscis.gov/sites/default/files/files/form/m-274.pdf.

[8] According to her deposition, Barnes went to look at the I-9 forms the Monday after e-mailing Brown, which would be July 13, 2015.  Barnes Dep. at 40.  It is unclear at what time of day she looked at the forms, but that fact is immaterial to the issue before the court.

H.R. to say, I'm sorry, but that [employee] has to be sent home until such time that you provide or they complete the I-9 form."  Barnes Dep. at 44-46, 77, 81-82.  At the end of the proposed memorandum, Barnes provided her phone number, so that any staff members with questions would know how to contact her.  Defs.' Facts at ¶ 41; Pl.'s Resp. at ¶ 41.

Finally, Barnes addressed an e-mail to the human resources staff members with the subject line: "What is the best way to comply with I-9 regulations?"  Barnes Dep. at 49; Defs.' Facts at ¶ 43; Pl.'s Resp. at ¶ 43.  Two human resources staff members, John Cain and Schintz, replied to her e-mail with suggestions as to the best and most efficient way to comply with the federal I-9 regulations.  Barnes Dep. at 10, 50; Defs.' Facts at ¶ 44; Pl.'s Resp. at ¶ 44.  Finally, Barnes had the meeting she requested with Brown, to which she brought the M-274 Handbook excerpts.  Barnes Dep. at 43; Defs.' Facts at ¶ 37; Pl.'s Resp. at ¶ 37; Pl.'s Facts at ¶ 38.  Brown told Barnes that the issue was one of "policy enforcement" that they would address at the cabinet meeting the following morning.  Brown Dep. at 57; Defs.' Facts at ¶ 38; Pl.'s Resp. at ¶ 38; Pl.'s Facts at ¶ 39.

The next day, on July 14, 2015, Barnes attended a County cabinet meeting, where she raised the I-9 compliance problem and insisted that the human resources department needed the members' assistance in bringing the County into compliance with federal law.  Barnes Dep. at 52; Defs.' Facts at ¶ 45; Pl.'s Resp. at ¶ 45.  She indicated that the County needed to comply "to avoid any potential monetary fines or legal fines from immigration and compliance enforcement."  Barnes Dep. at 88-89.  Brown indicated that the cabinet would look into the issue and get back to her.  *Id.* at 53.

After she returned from a vacation, Brown requested to meet with Barnes.  Defs.' Facts at ¶ 51; Pl.'s Resp. at ¶ 51.  Unbeknownst to Barnes, Brown intended to terminate her employment

at this meeting.  Brown Dep. at 65-66; Pl.'s Facts at ¶ 42.  On July 23, 2015, in anticipation of her meeting with Brown, Barnes e-mailed the human resources staff members because she sought to present Brown with a mission statement for the department, which included "compliance with local, state, and federal rules, regulations and laws."  Barnes Dep. at 58-59; Defs.' Facts at ¶ 52; Pl.'s Resp. at ¶ 52.  On July 24, 2015, Barnes met with Brown and Allen, and did not return to work thereafter.  Defs.' Facts at ¶¶ 53-54; Pl.'s Resp. at ¶¶ 53-54.  On July 29, 2015, Barnes prepared a letter of resignation.  Defs.' Facts at ¶ 55; Pl.'s Resp. at ¶ 55.[9]

### III.    DISCUSSION

#### A.    <u>Standard of Review</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

---

[9] In her complaint and amended complaint, Barnes states that the County terminated her employment.  The record shows, however, that she submitted a letter of resignation, and Barnes does not dispute this fact.  Defs.' Facts at ¶ 55; Pl.'s Resp. at ¶ 55.

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252.  Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor").  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case."  *Jones v. Beard*, 145 F. App'x 743, 745-46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute

sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).  Nonetheless, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B.    Analysis

### 1.    First Amendment Retaliation Claim

Barnes contends that the County forced her to resign on July 24, 2015, in retaliation for voicing her concerns about the County's employment authorization procedures.  Thus, she contends that in forcing her to resign, the County violated the First Amendment as it applies to the states through the Fourteenth Amendment.  The defendants contend that Barnes's statements were made pursuant to her official duties as the County's Director of Human Resources, and, accordingly, her statements were not protected by the First Amendment.

To establish a First Amendment retaliation claim, a public employee plaintiff must show that (1) the activity in question is protected by the First Amendment, and (2) the protected activity was a substantial factor in the alleged retaliatory action. *Flora v. County of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement [the employee] made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (internal quotation marks omitted) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Public employees who speak pursuant to their official duties do not speak as citizens, and such speech is thus not protected by the First Amendment. *Garcetti*, 547 U.S. at 421.

Whether a public employee's speech is "pursuant to official duties" is a mixed question of law and fact. *Flora*, 776 F.3d at 175 (citing *Dougherty v. School Dist. of Phila.*, 772 F.3d 979, 988 (3d Cir. 2014)). The inquiry is practical, and courts cannot merely rely on a public employee's job description or a list of enumerated official duties. *Garcetti*, 547 U.S. at 424-25. While the Supreme Court has not created a comprehensive framework for determining whether speech was made pursuant to an employee's official job duties, it has emphasized that a court must consider the responsibilities the employee undertook when the employee "went to work and performed the tasks he [or she] was paid to perform." *Id.* at 422. A court must also consider the manner of the speech, more so than its subject matter, and "specifically whether the plaintiff [was] expected, pursuant to [his or her] job duties, to make the speech that is at issue." *Jerri v. Harran*, 625 F. App'x 574, 580 (3d Cir. 2015) (internal quotation marks and citation omitted). Speech that was merely related to an employee's official duties, on the other hand, may be

protected if making the speech itself was not ordinarily within the scope of the employee's duties. *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).

In addition to the Supreme Court's guidance, the Third Circuit has articulated the following factors to examine in making the practical inquiry commanded by *Garcetti*:

> (1) whether the employee's speech relates to special knowledge or experience acquired through [the employee's] job . . . ; (2) whether the employee raises complaints or concerns about issues relating to [the employee's] job duties up the chain of command at his workplace . . . ; (3) whether the speech fell within the employee's designated responsibilities . . . ; and (4) whether the employee's speech is in furtherance of [the employee's] designated duties, even if the speech at issue is not part of them.

*Kimmett v. Corbett*, 554 F. App'x 106, 111 (3d Cir. 2014) (internal quotation marks, citations, and footnote omitted).

In the case at hand, the court allowed discovery only on the limited issue of whether Barnes, when she voiced her concerns about the County's I-9 compliance, spoke as a citizen or pursuant to her duties as the County's Director of Human Resources. The court's inquiry is thus focused on that issue. Because a court must not "make a superficial characterization of the speech or activity taken as a whole," and must, instead, "conduct a particularized examination of each activity for which the protection of the First Amendment is claimed," the court will look in turn at the two groups of statements that Barnes possibly could contend were protected by the First Amendment. *Johnson v. Lincoln Univ.*, 776 F.2d 443, 451 (3d Cir. 1985).

### a.   E-mail to Brown and Meeting with Brown

While Barnes does not precisely identify which statements she contends are protected by the First Amendment, or which statements led to her allegedly forced resignation, the first set of statements that could give rise to a First Amendment retaliation claim is her e-mail to Brown on July 8, 2015, raising her concerns about the County's I-9 compliance, and what she said at the

meeting that followed from that e-mail.  In her e-mail, Barnes forwarded Brown the e-mail conversation she had earlier with Schintz, Morley, and Markwith regarding the County's I-9 paperwork procedures. In that e-mail, she also said "HR will need the cooperation of all Department Directors to address this item."  She then requested a meeting with Brown to discuss the issue, which occurred on July 13, 2015.

Complaints up the chain of command are within an employee's official duties if the complaints are about issues related to an employee's workplace duties.  *See, e.g.*, *Taylor v. Pawlowski*, 551 F. App'x 31, 32 (3d Cir. 2013) ("[I]n making their voices heard up the chain of command, government employees speak pursuant to their duties as government employees." (internal quotation marks and citation omitted)); *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39-40 (3d Cir. 2012) (holding that reporting misconduct "logically fell within" the plaintiff's duties as a supervisor, and thus was not protected by the First Amendment); *Cindrich v. Fisher*, 341 F. App'x 780, 787 (3d Cir. 2009) ("In her 'chain of command' memos and e-mails, [the plaintiff] spoke in her capacity as a public employee contributing to the formation and execution of official policy." (internal quotation marks and citation omitted)); *see also Kimmett*, 554 F. App'x at 111 (articulating "whether the employee raises complaints or concerns about issues relating to his job duties up the chain of command at his workplace" as a factor to consider in deciding whether an employee's speech was pursuant to official duties).

Barnes's statement to Brown qualifies as such a complaint up the chain of command— she came across a glitch in her department's employee processing procedures, believed it could amount to noncompliance with federal law, and thus promptly reported the problem to a superior.  While the parties dispute whether Brown had told Barnes that she answered to Allen, rather than himself, that fact is immaterial.  *See* Plaintiff's Opp'n to Defs.' Mot. for Summ. J.

("Pl.'s Opp'n") at 6, 11 (claiming that there is a material factual dispute as to whether Barnes directly reported to Allen instead of Brown), Doc. No. 16.  Even if Brown instructed Barnes that Allen, who served as the Deputy Director of Administration, was her unofficial immediate superior, Barnes as a County department director reporting a problem to the County Executive can be characterized as nothing other than reporting up the chain of command.

Barnes also contends, and the defendants dispute, that she had no actual authority to supervise her own department's employees who administered employee orientation and dealt with the I-9 forms.  She contends that Allen supervised those employees, and that she was never involved in employee orientation.  *See* Pl.'s Opp'n at 6-7, 11-12.  Thus, she argues that ensuring I-9 compliance with federal immigration law fell outside of her official duties as Director of Human Resources.  Those contentions, however, amount to nothing more than the type of bare assertions that cannot defeat a motion for summary judgment.  Barnes points to no concrete evidence in the record supporting those contentions aside from her own deposition testimony. Even if the court were to assume that those contentions were true, however, the question of whether Barnes or Allen supervised the employees who handled the I-9 forms in the human resources department is immaterial.  The following circumstances surrounding her report to Brown, which are supported by the record and not disputed by either party, demonstrate that she was not speaking as a citizen, but as Director of Human Resources.

When Barnes first suspected that the County might not be in compliance with federal immigration law, she took numerous steps towards bringing the County into compliance.  She consulted attorneys from whom she had sought legal advice on prior occasions, and she did not do so as a citizen.  When she e-mailed Schintz, Morley, and Markwith, her hierarchical subordinates, seeking information about how the human resources department usually collects

14

and processes the I-9 forms, she also included an excerpt from the M-274 Handbook to provide them with guidance on the federal requirements.  Even if those employees unofficially reported to Allen, as Barnes alleges, Barnes provided that guidance not as a citizen, but as the head of the department and their superior.  *See* Barnes Dep. at 76 ("At least I attempted to provide guidance regarding compliance with federal law . . . .").  When she subsequently forwarded the conversation to Brown, she said: "*HR [human resources]* will need the cooperation of all Department Directors." Barnes Dep. at 40 (emphasis added); *see* Pl.'s Facts at ¶ 37.  In her own words, Barnes was speaking to Brown on behalf of the human resources department, and not as a private citizen.

Further, on July 13, 2015, when Barnes e-mailed Durkin, the County Solicitor, she attached a proposed interoffice memorandum.  This memorandum provided for a new I-9 process, and it was her hope that she could use it to "advise the different departments."  Barnes Dep. at 82.  Again, Barnes intended to advise the County department heads on how to comply with employment authorization requirements not as a citizen, but as the Director of Human Resources. *Garcetti*, 547 U.S. at 411-12 (holding that a prosecutor's speech was made pursuant to his official duties where he meant to advise his supervisor to dismiss a case through an internal office memorandum). Finally, that same day, Barnes e-mailed staff members in her department, soliciting suggestions as to "the best way to comply with I-9 regulations."  Barnes Dep. at 49-50.

These circumstances surrounding Barnes's e-mail to and meeting with Brown, none of which are disputed by either party, demonstrate that those statements were made pursuant to Barnes's job duties as Director of Human Resources.  Barnes came across an issue with how the County was processing new employees and verifying their eligibility to work, which is precisely

within the scope of what a human resources department handles.  Any employer would expect a staff member within a human resources department to report a problem with orientation paperwork if she were to come across one.  *See Foraker v. Chaffinch*, 501 F.3d 231, 241 (3d Cir. 2007) ("Thus, the controlling fact in the case at bar is that [the plaintiffs] were expected, pursuant to their job duties, to report problems concerning the operations at the range up the chain of command.").  This is especially true of an employee serving as the organizational head of the department.  Accordingly, Barnes's e-mail to Brown and the statements she made during their July 13 meeting were not protected by the First Amendment.

b.     Statements at the Cabinet Meeting

The second group of statements that could form the basis of a First Amendment claim is Barnes's statements at the County cabinet meeting on July 14, 2015, where she raised the I-9 compliance problem to all of the cabinet members present.  Barnes contends that even though her formal job description included ensuring compliance with federal law, it was not within her actual job duties to raise the compliance issue at the cabinet meeting because Brown and Allen had unofficially limited her authority.  Pl.'s Opp'n at 11.  Again, however, Barnes misses the point.  The undisputed circumstances surrounding Barnes's statements at the cabinet meeting demonstrate that those statements were also made pursuant to her official duties as Director of Human Resources.

In Barnes's e-mail to Durkin on July 13, 2015, the day before the cabinet meeting, she indicated that she intended to bring her proposed interoffice memorandum providing advice on how to comply with federal immigration law to the meeting, and hoped Brown's support would "empower HR" to require that all departments comply with her proposed guidelines.  Barnes Dep. at 44-46, 77, 81-82.  She wanted to ensure compliance in order to keep the County from

facing fines—not for the good of the public.  Barnes Dep. at 88-89.  Further, in her deposition, Barnes stated that when she brought up the issue of I-9 compliance at the meeting, she told the members that "we needed their assistance in bringing the county into compliance with federal law."  *Id.* at 52.  Again, the "we" Barnes was speaking on behalf of was the human resources department, and not the citizens of Northampton County.  Further, Barnes was not present at that meeting because she is a County citizen—she was present because she was a member of the cabinet as the Director of Human Resources.  *Id.*  In fact, in her e-mail to Durkin, she referred to the meeting as a "staff meeting."  *Id.* at 76.  Thus, even viewing all facts in the light most favorable to Barnes, she made her statements at the cabinet meeting pursuant to her official duties as Director of Human Resources.  Accordingly, the First Amendment offers her no protection as to those statements.

In a recent opinion, the Third Circuit noted that the audience of an employee's speech "is an important consideration in determining whether speech is 'official' or 'citizen' speech."  *Scrip v. Seneca*, No. 15-2637, 2016 WL 3162695, at *4 n.4 (3d Cir. June 7, 2016).  This is not a case in which a public employee learned of misconduct related to her job and testified about the misconduct in court, *see Lane v. Franks*, 134 S. Ct. 2369, 2379-80 (2014), or reported the misconduct to the press, *see Dougherty v. School District of Philadelphia*, 772 F.3d 979, 990 (3d Cir. 2014), or participated in an outside investigation into the misconduct, *see Byars v. School District of Philadelphia*, No. CIV.A. 12-121, 2015 WL 4876257, at *14 (E.D. Pa. Aug. 13, 2015).  And this not a case in which an employee's statements were merely "related" to her job duties.  *See Lane*, 134 S. Ct. at 2379; *Flora*, 776 F.3d at 178-79.  Barnes learned of the alleged noncompliance at work by answering a new employee's phone call and looking through files in the department of which she was the Director.  She then alerted her superior and subordinates to

the problem, sought their input, developed a solution to the problem, and proposed the solution to her peers and superiors at what was essentially a staff meeting.  In managing its office, a public employer must be able to evaluate how a public employee in a management position like Barnes's chooses to raise and remedy such internal operating problems.  *See Arnett v. Kennedy*, 416 U.S. 134, 168 (1974) ("[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch."). Deeming Barnes's speech as protected would not only contravene Supreme Court and Third Circuit precedent, but would also upset the policy balance courts have struck "between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

Because the undisputed facts demonstrate that Barnes made her statements to Brown and at the cabinet meeting pursuant to her duties as the County's Director of Human Resources, the court need not determine whether the compliance issue was a matter of public concern, or whether the County had an adequate justification for treating Barnes differently from any other member of the general public because of her statements.  She was not speaking as a citizen, and her statements thus do not fall under the First Amendment's protections.  Accordingly, the court will grant summary judgment in favor of the defendants with regards to Barnes's First Amendment retaliation claim under 42 U.S.C. § 1983.

## 2.      State Law Claims

The only federal claim over which the court has original jurisdiction is Barnes's First Amendment retaliation claim.  As explained above, however, the court must properly dismiss

that claim because the defendants have demonstrated that there is no genuine issue as to any material fact related to the claim, and they are thus entitled to judgment as a matter of law.  Her remaining claims—violation of the Pennsylvania Whistleblower Act and wrongful termination—arise under Pennsylvania law.  Under the doctrine of pendent jurisdiction, if the only federal claims in a suit are dismissed before trial, the court should dismiss the state claims unless judicial economy, convenience, and fairness to litigants weigh in favor of retaining jurisdiction over those claims.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

The court sees no reason to retain pendent jurisdiction over Barnes's remaining state law claims.  The parties have conducted limited discovery on the issue of whether Barnes's statements were made pursuant to her official duties, and that issue is related only to Barnes's federal First Amendment claim.  The parties have yet to engage in discovery as to Barnes's state law claims, and thus have not spent time and money developing those claims in federal court.  Since Barnes provides no other affirmative justification related to fairness or convenience for retaining pendent jurisdiction over her remaining state claims, the court will dismiss those claims without prejudice for lack of jurisdiction.

## IV.    CONCLUSION

The undisputed evidence of record, even viewing it in the light most favorable to Barnes as the non-moving party and resolving all reasonable inferences in her favor, demonstrates that Barnes, the County's Director of Human Resources, spoke as a public employee when she reported her employer's suspected noncompliance with federal law up the chain of command.  Therefore, the First Amendment does not protect this speech and the court will grant summary judgment in favor of the defendants and against Barnes with respect to her First Amendment

retaliation claim.  The court also declines to retain pendent jurisdiction over Barnes's remaining state law claims and will dismiss those claims without prejudice.

 A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.
